IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALLEN HIVELY, KENNETH KNAUFF, and RANDALL SHAW, JR., individually and on behalf of all persons similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ALLIS-CHALMERS ENERGY, INC., AIRCOMP, LLC, ARCHER UNDERBALANCED SERVICES, LLC, and ARCHER WELL COMPANY INC.,<br><br>Defendants. | Civil Action No. 13-106<br>Judge Nora Barry Fischer |

## MEMORANDUM OPINION

Currently before the Court is Plaintiffs' Motion to Facilitate Notice Pursuant to 29 U.S.C. § 216(b). (Docket No. [62]). The matter having been fully briefed is now ripe for disposition. (Docket Nos. 63; 66; 67; 69, 72).

**I.  BACKGROUND**

In this case, Plaintiffs Allen Hively, Kenneth Knauff, and Randle Shaw, Jr. (collectively, "Plaintiffs") seek to recover compensation for unpaid overtime work from Defendants Allis-Chalmers Energy, Inc., Aircomp, LLC, Archer Underbalanced Services, LLC, and Archer Well Company, Inc. (collectively, "Defendants"). Their Amended Complaint sets forth four counts:

- Count I outlines a claim under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201 et seq., alleging that Defendants willfully misclassify supervisors as "exempt" and fail to pay these employees overtime compensation. (Docket No. 36, ¶¶ 1–2; 78–87).

- Count II sets forth that Defendants violated the Pennsylvania Minimum Wage Act, 34 Pa. Cons. Stat. §§ 231.41, 231.43(b). (*Id.* ¶¶ 88–94).

- Count III advances a violation of the Pennsylvania Wage Payment and Collection Law, 43 Pa. Cons. Stat. § 260.3. (*Id.* ¶¶ 95–101).

- Count IV charges unjust enrichment. (*Id.* ¶¶ 102–07).

**A.     The Parties**

Plaintiffs include thirteen individuals—the three named Plaintiffs and ten additional Plaintiffs who have opted-in to this litigation—who have worked as "Supervisors" for Defendants, either currently or in the past. (Docket No. 36, ¶ 67; Docket No. 47, ¶ 67). In total, Plaintiffs' putative class is estimated to include thirty (30) current or former Supervisors. (Docket No. 63, at 4).

Defendants in this case are related entities involved in oil and gas exploration and production. (Docket No. 36, ¶ 10; Docket No. 47, ¶ 10). Defendant Allis-Chalmers Energy, Inc. ("Allis-Chalmers") merged into Seawell Limited in March 2011. (Docket No. 36, ¶ 10; Docket No. 47, ¶ 10). The resulting company is Archer Limited, a publicly traded company. (Docket No. 29). Defendant Archer Well Company, Inc. ("Archer Well") is a Texas corporation and the successor-in-interest to Allis-Chalmers. (Docket No. 36, ¶ 10; Docket No. 47, ¶ 10). It is a global oilfield service company that specializes in drilling and well services. (*Id.*). Defendant AirComp, LLC ("AirComp") was previously a wholly owned subsidiary of Allis-Chalmers. (Docket No. 47, ¶ 11). Defendant Archer Underbalanced Services LLC ("Archer Underbalanced") is the successor to AirComp. (*Id.* ¶ 12). It is organized under Delaware law and its primary place of business is in Houston, Texas. (*Id.*).

### B. Information Concerning Supervisors

Supervisors—who may also have job titles including "Air Compression Supervisors," "Air Supervisors," "Compression Supervisors," or "Pushers" (Docket No. 63, at 4)—are assigned to various job sites by Archer Underbalanced, which controls Supervisors' work schedules, assignments, and conditions of employment. (Docket No. 36, ¶¶ 32–33; Docket No. 47, ¶¶ 32–33). These jobs entail overseeing a rig, which uses compressed air to bore holes into the ground and then extract oil and/or gas. (Docket No. 36, ¶ 41; Docket No. 47, ¶ 41). Drilling jobs operate around the clock and are generally staffed by two air operators who work alternating shifts. (Docket No. 36, ¶¶ 42, 43; Docket No. 47, ¶¶ 42, 43). Supervisors have no input regarding the location of their job assignments. (Docket No. 36, ¶ 40; Docket No. 47, ¶ 40).

Per the written "Compression Supervisor" job description, Supervisors' general responsibilities involve "overseeing job assignments and ensuring safety regulations and policies are followed and customer satisfaction." (Docket No. 67-1, at 2). More specific duties entail: supervising pre-job preparation; supervising compression operators on site; supervising the required preventative maintenance tasks at rig sites; supervising, training, and directing air operators; managing client interaction at job sites; reporting and conducting initial investigations for safety and service delivery incidents at job sites; leading the troubleshooting procedures for unplanned operations and service-delivery problems at the rig sites; and supervising post-job demobilization. (*Id.*).

Supervisors are typically assigned to work at one to three jobs at any given time, and are required to be on-call twenty-four hours per day, seven days per week for their assigned jobs. (Docket No. 36, ¶¶ 43, 48; Docket No. 47, ¶¶ 43, 48). Although Defendants do not keep detailed records of the number of hours that Supervisors work, the parties do not dispute that Supervisors

are not paid overtime compensation because Defendants classify Supervisors as "exempt" employees. (Docket No. 36, ¶¶ 51–52; Docket No. 47, ¶¶ 51–52).

C. **Procedural Background**

Plaintiffs filed this suit individually and on behalf of similarly situated employees, and now move this Court to conditionally certify a collective action and facilitate court-approved notice to potential class members, whom Plaintiffs contend include current and former employees of Defendants that currently are Supervisors or have been during the three-year period dating back from the present Order ("Putative Class"). (Docket No. 63, at 1). Additionally, Plaintiffs ask the Court to approve their proposed Notice and Opt-In Consent Form (Docket Nos. 63-1, 63-2); order Defendants to provide Plaintiffs' counsel with an electronic database containing the names, contact information, dates of work, and social security numbers of class members within one week; order Defendants to post a copy of the Notice in appropriate, conspicuous, visible, and accessible places at each of its facilities, such that current Supervisors will see it; and order that all class members may opt-in to this action within sixty days of the date of mailing the Notice and Opt-In Consent Form. (Docket No. 63, at 3).

Plaintiffs' core complaint with respect to their FLSA claim is that Defendants willfully misclassified Supervisors as exempt in order to improperly deny them overtime compensation, in violation of 17 U.S.C. § 207(a). (Docket No. 36, ¶ 66).[1] To this end, Plaintiffs argue that Supervisors primarily perform non-exempt tasks beyond the duties spelled out in their formal job descriptions, and that they have little to no authority to make decisions regarding staffing, production goals, hiring or firing employees, discipline, promotion, or entering agreements on Defendants' behalf. (*Id.* ¶¶ 53–61, 66).

---

[1] Exemption from overtime compensation laws is addressed in 17 U.S.C. § 213.

Defendants deny having engaged in unlawful conduct. (Docket No. 47, at 1). They reason that Supervisors were properly classified as exempt based on the general duties laid out in each Supervisor's job description. (*Id.* at 15; Docket No. 66, at 12). Given that Defendants intended and expected Supervisors to perform exempt duties (Docket No. 66, at 5, n.3), Defendants maintain that Supervisors were not misclassified or illegally denied overtime compensation, precluding any liability under the FLSA. (Docket No. 47, at 14–15).

## II. LEGAL STANDARD

Through the pending Motion, Plaintiffs seek conditional certification of the Putative Class and court-facilitated notice of same. Section 216(b) of the FLSA authorizes employees to bring an action on behalf of themselves and others "similarly situated." 29 U.S.C. § 216(b). "No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." *Id.*

Courts follow a two-tiered analysis in determining whether a case may move forward as a collective action. *Symczyk v. Genesis HealthCare Corp.*, 656 F.3d 189, 192 (3d Cir. 2011), *rev'd on other grounds*, 133 S. Ct. 1523 (2013). The first phase, or "notice" phase, requires that a court "make[] a preliminary determination whether the employees enumerated in the complaint can be provisionally categorized as similarly situated to the named plaintiff." *Id*. If the plaintiff carries this burden, the collective action is "conditionally certified" for purposes of notice and discovery. *Id.* The second phase is addressed after all putative class members have had an opportunity to opt in and further discovery has taken place. *Zavala v. Wal-Mart Stores, Inc.*, 691 F.3d 527, 534 (3d Cir. 2012). At this "more stringent" stage, the plaintiff must show by a preponderance of the evidence that the class members are similarly situated. *Id.* Articulating the differences in these two stages of the collective action certification analysis, the Third Circuit has

explained that the initial step of conditional certification asks whether similarly situated plaintiffs do, in fact, exist; by contrast, the second stage asks whether the specific plaintiffs that opted-in to the class are, in fact, similarly situated to the named plaintiffs. *Id.* at 536 n.4 (quoting *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010)).

Conditional certification poses a lower threshold, requiring a "modest factual showing" that the proposed plaintiffs are similarly situated. *Symczyk*, 656 F.3d at 192–93. This standard is not particularly high—it merely calls for "some evidence, 'beyond mere speculation,' of a factual nexus between the manner in which the employer's alleged policy affected her and the manner in which it affected the other employees." *Id.* at 193 (citing *Smith v. Sovereign Bancorp., Inc.,* No. 03–2420, 2003 WL 22701017, at *3 (E.D. Pa. Nov. 13, 2003)). Generally, plaintiffs meet the standard by producing some evidence indicating common facts among the parties' claims, and/or a common policy affecting all the collective members. 7B Wright, Miller, & Kane, *Federal Practice and Procedure: Civil* § 1807, at 489–90 (3d ed. 2005).

**III. DISCUSSION**

In support of the pending Motion, Plaintiffs contend that they are similarly situated to the Putative Class members because Supervisors generally perform the same duties and are all subject to Defendants' common policy of classifying Supervisors as exempt. (Docket No. 63, at 2). Further, Plaintiffs argue that conditional certification is appropriate because prompt judicial notice will allow Putative Class members to learn about this action in a timely matter within the three-year statute of limitations for FLSA claims. (*Id.*). Defendants raise several arguments as to why this putative class should not be certified, and why the form and content of Plaintiffs' proposed notice would be inappropriate if the class is conditionally certified. (Dockets No. 66; 72). The Court addresses each issue in turn.

A.  **Level of Review**

Initially, Defendants argue that this Court should apply an "intermediate" standard of review—rather than the "modest factual showing standard" articulated above. (*Id.* at 10). Defendants reason that the level of review is properly contingent on the amount of discovery that has been conducted, and that the level of discovery already completed in this case compels a more searching review. (*Id.*).[2] In support of this "intermediate" standard, Defendants point to several district court cases. (*Id.*), which the Court notes were all handed down before *Symczyk*. (*Id.*). Defendants have offered no case law supporting their contention that this intermediate standard applies post-*Symczyk*.

The Court finds Defendants' argument unconvincing. As Plaintiffs observe, Defendants rely on case law that predates *Symczyk*, comes largely from other circuits, and may not squarely apply to our facts. (Docket No. 69, at 8–9). The specific standard that Defendants urge—"consider all relevant factors and make a factual determination on a case-by-case basis to determine whether the proposed collective class is in fact 'similarly situated'" (Docket No. 66, at 10)—seems an ill fit under the two-step process articulated in *Symczyk*, 656 F.3d at 193–94, and explicitly adopted in *Zavala*, 691 F.3d at 536. The Third Circuit stressed that conditional certification is primarily about facilitating notice; Plaintiffs' burden is less demanding than Defendants would have it be. *Zavala*, 691 F3d at 536 (citations omitted). Therefore, the Court will proceed under the "modest factual showing" standard to determine whether Plaintiffs have shown that conditional certification is appropriate.

---

[2] Defendants argue that substantial discovery has already been completed:
> Plaintiffs have served and Defendants have responded to 204 requests for production of documents and 92 written interrogatories. To date, Defendants have produced almost 7,000 pages in response to Plaintiffs' requests for documents. Plaintiffs have noticed four witnesses and deposed one witness pursuant to Fed. R. Civ. P. 30(b)(6). Defendants have served and Plaintiffs have responded to 195 requests for production of documents. Defendants have also deposed the three named Plaintiffs.

(Docket No. 66, at 11). Plaintiffs disagree, and assert that discovery "is still in its infancy." (Docket No. 69, at 9).

B.     **"Similarly Situated" Analysis**

To support their contention that the Putative Class is similarly situated, Plaintiffs rely primarily on five declarations proffered by Plaintiffs and deposition testimony of John Meyers, the President and Rule 30(b)(6) designee of Archer Underbalanced. (Docket No. 63; Docket Nos. 63-3 to 63-8; Docket No. 69, at 7–8). They argue that this evidence suffices for conditional certification purposes because it provides some evidence beyond mere speculation that the Putative Class shares a factual nexus, specifically, that the Potential Class shared similar duties, performed similar non-exempt tasks, were subject to similar corporate policies, and were similarly denied overtime compensation. (Docket No. 63, at 11–13; Docket No. 69, at 7).

Defendants present several counter arguments, which can be summarized as follows. First, the Putative Class is not similarly situated because Supervisors' duties vary according to a variety of factors related to customers, equipment, job site, and weather. (Docket No. 66, at 6–8). Second, uniform business policies or compensation practices, by themselves, will not establish that the Putative Class is "similarly situated." (Docket No. 72, at 2). In short, Defendants argue that Plaintiffs failed to show evidence of some practice or policy with respect to which the Putative Class is similarly situated. (*Id.* at 4). They further contend that Plaintiffs' ultimate theories for liability will turn on individual Supervisors deviating from Defendants' policies, and so, Defendants argue, Plaintiffs' claims are necessarily individualized and not similar. (Docket No. 66, at 3, 9, 14–17; Docket No. 72, at 3).

Plaintiffs respond by pointing to the similarities that are demonstrated through the five proffered declarations and further substantiated by the depositions of the three named Plaintiffs: each Plaintiff proffered that he performed non-exempt duties, worked more than forty hours per week, and was not compensated for overtime work. (Docket No. 69, at 15–17). Plaintiffs

additionally point out that Mr. Meyers's deposition testimony—that Supervisors are given the same basic job responsibilities—further substantiates Plaintiffs' contentions. (*Id.* at 7). This evidence suffices at this first stage of certification, Plaintiffs contend, because showing a uniform business practices (such as exempting a certain class of workers from overtime pay) constitutes some evidence that goes beyond mere allegations that the Class is similarly situated. (*Id.* at 13).

The Court finds that Plaintiff has made a "modest factual showing," satisfying the "fairly lenient standard." *Zavala*, 691 F.3d at 535 (citations omitted). To this end, Defendants' common business policies and compensation practices were set out through five Plaintiffs' declarations. (Docket Nos. 63-3; 63-4; 63-5; 63-6; 63-7). These proffers were consistent with testimony given by Meyers, Archer Underbalanced's President. (Docket No. 63-8). Specifically, he testified as to similarities among the Putative Class with respect to salary determination, general job duties, exempt classification, and uncompensated overtime work. (*Id.* at 3–7, 10, 18, 19).

The Court has considered the case law cited by Defendants in support of their arguments, but finds these cases are neither controlling nor persuasive with respect to the pending Motion. (Docket Nos. 66; 72). For example, *Swartz v. Windstream Comm'cns, Inc.*, Civ. No. 09-946, 2010 WL 2723213 (W.D. Pa. July 8, 2010), resolved motions for summary judgment in an FLSA action brought by an individual plaintiff. *Id.* at *1. Although that opinion speaks to the standards applicable to the merits of an FLSA claim, the Court finds it inapposite at this stage of the litigation, and because it did not involve a collective action. *Id.*

Similarly, the Court finds both *Bramble v. Wal-Mart Stores, Inc.*, No. 09-4932, 2011 WL 1389510 (E.D. Pa. Apr. 12, 2011) and *Moore v. PNC Bank, N.A.*, No. 12-1135, 2013 WL 2338251 (W.D. Pa. May 29, 2013) unpersuasive. Defendants rely on both cases to support their contentions that Plaintiffs have not brought forth sufficient evidence of the types of uniform

policies and practices necessary for conditional certification. (Docket No. 66, at 14, 16, 17). But, the Court finds these cases factually distinct from the case at hand. In *Bramble*, two plaintiffs who worked as Asset Protection Coordinators (APCs) for Wal-Mart Stores sought conditional certification for a class of APCs, arguing that they were misclassified as exempt. *Bramble*, 2011 WL at *1. Two other APCs opted into the class, which was estimated to include "at least 5,588 persons from over 3,500 stores throughout the United States." *Id.* & n.3. The plaintiffs submitted deposition and declaration testimony from the four class members to support their motion, but the court found that this "sparse evidence" failed to establish the necessary factual nexus required to conditionally certify the entire class. *Id.* at *2, 8.

*Moore* involved an FLSA action brought by an individual plaintiff, joined by one opt-in plaintiff, who moved to conditionally certify a nationwide class of Assistant Branch Managers (ABMs). *Moore*, 2013 WL at *1. The total class would include approximately 2,050 ABMs, whom the plaintiff argued were all misclassified as exempt. *Id.* Despite the large putative class, plaintiff proffered *no* evidence that the class was similarly situated except for common company policies. *Id.* at *4–6. The court denied the motion. *Id.* at *7. In so doing, the court noted that simply pointing to a uniform policy exempting certain employees does not justify conditional certification; a plaintiff must bring forth other evidence, such as deposition testimony or declarations from class members, to substantiate the allegations and establish the factual nexus. *Id.* at *5–6.

In sum, this Court finds that the differences in terms of class size and quantum of evidence presented distinguish the instant case from *Bramble* and *Moore*. Those cases involved plaintiffs proffering little evidence to support certifying classes of thousands. *Bramble*, 2011 WL at *1 & n.3; *Moore*, 2013 WL at *1, 4–6. By contrast, the present total Putative Class here is

estimated to consist of just thirty individuals. (Docket No. 63, at 4). Thirteen of these thirty have already consented to join the Class, and five of the thirty submitted declarations in support of Plaintiffs' motion. (Docket No. 36, ¶ 67; Docket Nos. 63-3 to 63-8).

In examining these cases, the Court also notes that both courts in *Bramble* and *Moore* applied the "lenient" modest factual showing standard, as this Court does. *See Bramble*, 2011 WL at *4 ("The modest factual showing test is a lenient standard."); *Moore*, 2013 WL at *5 ("Certification at the notice stage, although governed by a lenient standard, is not automatic."). Yet, many of Defendants' arguments seemingly push the Court towards applying a second-stage standard that more rigorously weighs evidence, finds facts, and scrutinizes the similarities between plaintiffs who have opted-in. *See Zavala*, 691 F.3d at 534 ("[T]o certify an FLSA collective action for trial, the District Court—after considering the claims and defenses of the parties and all the relevant evidence—must make a finding of fact that the members of the collective action are 'similarly situated.'"). This, the Court declines to do. Defendants, however, are free to raise these arguments at later stages, when Plaintiffs would face a more onerous standard. *Id.* At this stage, the Court will not reach the merits of Plaintiffs' FLSA claims or make conclusive findings. *Karlo v. Pittsburgh Glass Works, LLC*, 880 F. Supp. 2d. 639, 635 (W.D. Pa. 2012) (Fischer, J.). It suffices that Plaintiffs brought forth declarations from 15% of the total Putative Class (Docket No. 69, at 6), and the President of one of the Defendants (Docket No. 63-8), that shows similarities among the Putative Class that may demonstrate an FLSA violation. *Zavala*, 691 F.3d at 538 (suggesting that "similarly situated" can be established through "some common employer practice that, if proved, would help demonstrate a violation of the FLSA"). Therefore, the Court will order conditional certification.

C.     Scope of Conditional Certification

Having determined that conditional certification is appropriate, the Court now turns to the parties' arguments regarding the scope of same. Defendants argue that the class of Supervisors should be cabined in two respects: (1) to Supervisors employed by Archer Underbalanced and its predecessor, AirComp; and (2) to Supervisors employed at the Muncy and Mt. Morris Locations, where each of the present Plaintiffs worked. (Docket No. 66, at 18–20). Defendants assert that these limitations are appropriate because the thirteen Plaintiffs presently in the Class worked for these two companies, and at these two locations. (*Id.*). It follows, Defendants argue, that Plaintiffs have met the "similarly situated" threshold only with respect to these companies and sites.

Regarding the first issue, Plaintiffs argue in response that Defendants' argument inappropriately goes to the merits of the underlying FLSA claim, rendering it inapplicable at the present stage. (Docket No. 69, at 17–19). Alternatively, Plaintiffs argue that they have presented a "modest factual showing" that would support joining Archer Well and Allis-Chalmers, in that they produced evidence that all four companies shared the same human resources department, Archer Wells stores Plaintiffs' human resources records, Allis-Chalmers appeared on Plaintiffs' pay stubs, and Allis-Chalmers issued the Supervisors' employee handbooks. (*Id.* at 18). Regarding the second issue, Plaintiffs argue that nationwide certification is appropriate here because Defendants' policies and practices apply uniformly to Supervisors nationwide. (*Id.* at 18–19). They also point out the Opt-in Plaintiff Sanders declared that he worked in Texas. (*Id.* at 19).

On both points, the Court is inclined to agree with Plaintiffs. Although Defendants' contentions may ultimately prove correct, they are premature. Plaintiffs have produced sufficient

evidence of uniform policy made at a high organizational level. *Karlo*, 880 F. Supp. 2d at 645–46. Whether Plaintiffs can show the Class is similarly situated with respect to Supervisors from across the nation who might opt-in, or with respect to Allis-Chalmers and Archer Wells, is an issue for the second stage of certification, properly addressed after discovery is complete. *Id.* at 646.

D. **Court-Facilitated Notice**

Finally, the parties disagree as to the form and content of the notice that will be distributed to the putative class members. This Court has the authority to facilitate notice to putative opt-in plaintiffs. *Karlo v. Pittsburgh Glass Works, LLC*, 880 F. Supp. 2d 629, 648 (W.D. Pa. 2012) (citing *Hoffman-LaRoche*, 493 U.S. at 169).

Defendants take issue with several aspects of Plaintiffs' proposed notice, such as the neutrality and precision of the language used, the extent of information requested to be produced regarding putative members, and the means for posting and distributing said notice. (Docket No. 63, at 18–22). Plaintiffs respond by conceding to Defendants' argument that social security numbers need not be disclosed, and otherwise offering explanations for their position as to the other concerns. (Docket No. 69, at 19–21).

In resolving this issue, the Supreme Court's discussion of court-facilitated notice pursuant to § 216(b) is instructive. *Hoffman-LaRoche*, 493 U.S. at 169–74. District courts may properly oversee this process in a management role. *Id.* at 171 ("One of the most significant insights that skilled trial judges have gained in recent years is the wisdom and necessity for early judicial intervention in the management of litigation.") (citation omitted). At the same time, this Court must remain scrupulously neutral as to the parties and the merits. *Id.* at 174. In this Court's view, the disputes relating to the form and content of notice would be best resolved by the

13

parties. To that end, the Court will order that the parties meet and confer regarding the contents and language of the notice, as well as how the notice will be distributed.

Plaintiffs requested that any such "meet and confer" time period be tolled with respect to plaintiffs who may later opt-in to the Class.[3] (Docket No. 69, at 21, n.19). The doctrine of equitable tolling is read into every federal statute of limitation, including the FLSA. *William A. Graham Co. v. Haughey*, 646 F.3d 138, 147 (3d Cir. 2011), *cert. denied*, 132 S.Ct. 456 (2011) (discussing the equitable tolling doctrine at length). When available, the doctrine "can rescue a claim otherwise barred as untimely by a statute of limitations when a plaintiff has 'been prevented from filing in a timely manner due to sufficiently inequitable circumstances.' " *Santos ex rel. Beato v. United States*, 559 F.3d 189, 197 (3d Cir. 2009) (quoting *Seitzinger v. Reading Hosp. & Med. Ctr.*, 165 F.3d 236, 240 (3d Cir. 1999)).

Ultimately, the question is whether a grant of equitable tolling would be "in the interest[s] of justice." *Taylor v. Pittsburgh Mercy Health Sys., Inc.*, Civ. No.09-377, 2009 WL 1324045, at *3 (W.D. Pa. May 11, 2009). Here, the Court finds that equitably tolling the statute of limitations during the meet-and-confer period is appropriate, in that the delays caused while counsel negotiates should not prejudice the rights of potential plaintiffs. *Beauperthuy v. 24 Hour Fitness USA, Inc.*, 06-0715SC, 2007 WL 707475, at *8 (N.D. Cal. Mar. 6, 2007).

---

[3] The FLSA requires that "a party plaintiff must 'commence' his cause of action before the statute of limitations applying to his individual claim has lapsed." *Symczyk*, 656 F.3d at 200. The FLSA further provides that actions to recover unpaid overtime compensation must be commenced within two years of the alleged violation or within three years after the cause of action accrued for willful violations. 29 U.S.C. § 255(a). The date on which an FLSA collective action is commenced differs between named plaintiffs and opt-in plaintiffs. 29 U.S.C. § 256; *Symczyk,* 656 F.3d at 200. For named plaintiffs, an action is commenced on the date they file the Complaint. 29 U.S.C. § 256, but for opt-in plaintiffs, the action is not commenced until the date on which they file their written consent. *Id.* Such written consents will not relate back to the filing date of the Complaint. *Woodard v. FedEx Freight E., Inc.*, 250 F.R.D. 178, 193 (M.D. Pa. 2008). Therefore, absent equitable tolling, "the prospective opt-in plaintiffs' recovery will be limited to the two-or three-year period preceding their written consents." *Id.*

## IV. CONCLUSION

For the reasons hereinabove set forth, Plaintiff's Motion (Docket No. [62]) will be granted, in part, and denied, in part. An appropriate order follows.

*s/ Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

Date:   November 5, 2013
cc/ecf: All counsel of record